**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION AT KNOXVILLE**

**TABATHA HUTSON,**

      **Plaintiff,**

**v.**                                      **Case. # 3:18-CV-48**
                                               **JURY DEMANDED**

**CONCORD CHRISTIAN SCHOOL, LLC
AND FIRST BAPTIST CONCORD
FOUNDATION, INC.**

      **Defendants.**

---

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

---

In support of its contemporaneously filed Motion for Summary Judgment, Concord Christian School LLC, and First Baptist Concord Foundation, Inc., ("Concord Christian" or "Defendants") by and through counsel hereby submit this Memorandum of Law in accordance with Rule 56 of the Federal Rules of Civil Procedure and the Local Rules of this Court and states as follows:

## INTRODUCTION

Concord Christian School, LLC (hereinafter, "CCS") is a Christian School whose purpose is to advance the practice of Christianity through teaching, education, and a moral code. Plaintiff was employed as a teacher at CCS under a series of one-year contracts.

At the end of the 2016-2017 school year, the Plaintiff's contract was not renewed with CCS. When she met with administration toward the end of the school year, she acknowledged to her supervisor, Leigh Ledet, that she had become pregnant out of wedlock during the school year.

Plaintiff was told that her contract would not be renewed for the next school year, in part for violating the school's foundational beliefs and moral code to not engage in pre-marital sexual activity.

The undisputed facts show that Plaintiff's role as a teacher at CCS involved her serving in a ministerial capacity, thereby barring her claims under the Constitutionally created ministerial exception to claims of employment discrimination announced by the United States Supreme Court in *Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC,* 565 U.S. 171 (2012). CCS is "unashamedly" a religious institution for analysis of the ministerial exception. As a teacher of the foundational beliefs and morals of the religious institution Plaintiff, is a ministerial employee. The ministerial exception applies based upon Plaintiff's acknowledgment of the Statement of Faith, her lesson plan requirements, position description contained in the employee handbook, and her job application. Plaintiff's conditions of employment cause her claims to fall within the ministerial exception which preclude her from bringing discrimination claims against CCS. Defendants have carried their burden of establishing on the undisputed facts that Plaintiff falls in the ministerial exception to Title VII, and summary judgment should be granted as to all claims.

With regard to the defendant First Baptist Concord, Foundation, Inc., there is no proof that this entity employed the plaintiff in any capacity. Her employer has always been Concord Christian School, LLC. Plaintiff has presented no proof that she is employed by this defendant and has not provided a right to sue this entity from the EEOC.

For these reasons, further articulated below, Plaintiff cannot, as a matter of law, bring claims of sex and pregnancy discrimination under either Title VII or the Tennessee Human Rights Act. Therefore, Defendants are entitled to summary judgment on all of Plaintiff's claims.

## ALLEGATIONS AND FACTUAL BACKGROUND

**A.      Allegations of the Complaint.**

Plaintiff filed this lawsuit asserting one cause of action under two statutes.  She claims she experienced sex and pregnancy discrimination under (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., as amended by the Pregnancy Discrimination Act of 1978 and (2) the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-401, *et seq*.

**B.      History of Concord Christian.**

First Baptist Concord is a Baptist church which has served the Knox County community for over two decades. (Ledet Declaration paragraph 4). For approximately twenty-two years, First Baptist Concord has been serving the community through its Weekday Early Education (WEE) Program for preschoolers. (Declaration of Leigh Ledet, ¶ 4.) The program was developed to support and encourage parents by laying a firm and positive, Bible-based foundation for their young children. (Declaration of Ledet, ¶ 5).

In 1995, First Baptist Concord established a Feasibility Committee to evaluate the possibility of adding an elementary school to the already successful preschool program. (Declaration of Ledet, ¶ 6).  After extensive study, the church agreed to add grades 1- 3 in the Fall of 1996, grade 4 in 1997 and grade 5 in 1998. (Declaration of Ledet ¶ 7).

In the Spring of 1998, First Baptist Concord voted to expand Concord Christian School through the Middle School grades beginning in 1999. (Declaration of Ledet, ¶ 8).  First Baptist Concord opened its doors to the very first group of Concord Christian School students in 1996. (Declaration of Ledet, ¶ 9).  In 2008, Concord Christian School, LLC was organized as a separate

entity so that it could better serve the Knox County Community. However, to this day, CCS has remained a ministry of First Baptist Concord. *See, www.concordchristianschool.org.* Since then, Concord Christian School, LLC has grown to serve close to 800 students. (Declaration of Ledet, ¶ 10).

### C. Plaintiff's Employment at Concord Christian.

When job openings occur, CCS seeks applicants who are professionally qualified, love students and who, by the pattern of their lives are Christian role models. (Declaration of Ledet, ¶ 11). On or around March 28, 2011, the Plaintiff filled out an Application for Teacher Employment ("Employment Application"). (Exhibit A, Ledet Declaration). On page 1 of the Employment Application, Plaintiff was given the opportunity to state whether she fully supported the CCS Statement of Faith and to explain if she supported only part of the CCS Statement of Faith. (Exhibit A, Ledet Declaration). Plaintiff affirmatively indicated that she fully supported the CCS Statement of Faith "as written." (Exhibit A, Ledet Declaration).

CCS's Statement of Faith is found on its website and the 2016-2017 employee handbook (Exhibit D, Ledet Declaration). It states as follows:

> Concord Christian School is a ministry of First Baptist Concord, and our doctrinal beliefs are a reflection of the church's beliefs. We are unashamedly a Christian program and we make no apologies for or compromises to our convictions. It is our desire to present the gospel of Jesus Christ so that each child may have the opportunity to accept Him as Lord and Savior of his or her life; We believe the Bible to be the inspired, the only infallible, authoritative, inerrant Word of God (2 Timothy 3:15, 2 Peter 1:21). We believe there is only one God, eternally existent in three persons – Father, Son, and Holy Spirit (Genesis 1:1, Matthew 28:19, John 10:30); We believe in the deity of Christ (John 10:33), His virgin birth (Isaiah 7:14); His sinless life (Hebrew 4:15); His miracles (John 2:11); His resurrection (John 11:25); His ascension to the right hand of the Father (Mark 16:19); His personal return in power and glory (Acts 1:11; Revelation 19:11). We believe in the absolute necessity of regeneration by the Holy Spirit for salvation because of the exceeding sinfulness of human nature; and that men are justified on the single ground of faith in the shed blood of Christ, and that only by God's grace and through faith we alone are saved (John 3:16 – 19; 5:24; Romans 3:23; 5: 8 – 9). We believe in the resurrection of both the saved and the lost; they that are saved unto the resurrection of life, and they that are lost unto the resurrection of damnation (John 5: 28 – 29). We believe in the spiritual unity of believers in our Lord Jesus Christ (Romans 8: 9; I Corinthians 12: 12; Galatians 3; 26 – 28). We believe in the present ministry of the Holy Spirit by

4

> whose indwelling the Christian is enabled to live a godly life (Romans 8: 13 – 14; I
> Corinthians 3; 16; 6: 19 – 20; Ephesians 4:30; 5: 18). Because we are committed to
> giving our best to the Lord, you can be assured that we will continually seek to offer
> and achieve excellence in academic education. Whether therefore ye eat, or drink, or
> whatsoever ye do, do all to the glory of God. I Corinthians 10:31

Every employee, male or female, is required to ascribe verbally and in writing to Concord

Christian's Statement of Faith. (Ledet Declaration, Exhibit D, pg. 8).

On Plaintiff's Employment Application, the Plaintiff wrote extensively about her Christian

Background and belief in God. (Exhibit A, Ledet Declaration) She listed her denominational

preference as Baptist. (Exhibit A, Ledet Declaration) Her current church affiliation was listed as

First Baptist Concord, of which CCS is a ministry.

Also on her Employment Application, the Plaintiff was asked "In your own handwriting,

briefly give your Christian testimony." The Plaintiff responded in her own handwriting with the

following statement.

> I consider myself a "baby" Christian. I did not know Christ to as my Lord until I
> found myself pregnant and my husband involved in an affair. I was raised Catholic
> but never understood relationship with Jesus Christ. I visited a church when I was
> about 3 months pregnant. I was in a mess with my life and turned to that church.
> That day in 2005 changed my life forever. As I sat in church at Ingleside Baptist
> Church and listened to Tim McCoy the pastor, I felt the Holy Spirit pull at me. I felt
> every person in that church disappear and all that was left was me and God. I cried
> the entire service. At the end during invitation, I prayed and asked God to take my
> whole life. I gave Him my heart and made him Lord of my life. I have never looked
> back. I've had some intense trials since that day, but I can honestly say that my God
> has never left me. He has been my comforter, my provider, my husband, the Father
> for my son, my confidant, and the Father I never had! I'm glad Jesus Christ is my
> Lord and Savior.

(Exhibit A, Ledet Declaration)

At the end of her Employment Application, the Plaintiff signed a Declaration of Moral

Integrity which states as follows:

> **DECLARATION OF MORAL INTEGRITY** Concord Christian School expects
> all of it employees to model the same Christian values and lifestyle that it seeks to
> include in its students. As an applicant for a staff position at Concord Christian
> School, I recognize, understand, and agree to live by the Christian moral standards of

5

the school. **I declare that during the past year I have not engaged in, at the current time I am not engaging in, and promise that I will not during the term of my employment engaged in inappropriate sexual conduct. Inappropriate conduct includes, but is not limited to, such behaviors as the following: heterosexual activity outside of marriage (e.g., premarital sex, cohabitation, and extramarital sex),** homosexual or lesbian sexual activity, sexual harassment, use or viewing of pornographic material or websites, or sexual abuse or improprieties towards minors as defined by Scripture and federal or state law. **I declare that the above statement is factual and true.** My signature below indicates that I meet the moral integrity and Christian role model lifestyle requirements of Concord Christian School."

(Exhibit A, Ledet Declaration (emphasis added).

Whether an applicant is female or male, all applicants for employment as a teacher at CCS agree and sign the conditions set forth on the Employment Application. All applicants, whether male or female, declare that during the past year they have not engaged in, at the current time are not engaging in, and promise that they will not during the term of employment engaged in inappropriate sexual conduct including, but not limited to, such behaviors as the following: heterosexual activity outside of marriage (e.g., premarital sex, cohabitation, and extramarital sex), and homosexual or lesbian sexual activity. (Ledet Declaration paragraph 25)

CCS's policy against inappropriate sexual conduct applies both to male and female employees and is therefore applied equally. If a male or female violated CCS's policy against inappropriate sexual conduct, either could be terminated or their contract would not be renewed.

On August 1, 2011, the Plaintiff was hired to work for Concord Christian. On that date she completed a New Hire Information Form which states "Furthermore, I commit to conduct myself in a manner that demonstrates a Christ-like attitude in performing all position responsibilities in order to exalt our Lord and Savior Jesus Christ." (Exhibit B, Ledet Declaration). The Plaintiff signed the New Hire Information Form affirming her commitment to the foregoing statement. (Exhibit B, Ledet Declaration). The Plaintiff's first contract involved teaching kindergarten, and

6

during her last contract from 2016 to 2017 she provided Christian education though biblical integration to second graders at CCS.

Every contract year that the Plaintiff was employed by CCS, the Plaintiff signed an agreement acknowledging that that she agreed to follow the policies and procedures set forth in the faculty/staff handbook. The Faculty/Staff Handbook for 2016 through 2017 provides for a Commitment Statement which states as follows:

> We, the administration, staff, and congregation of First Baptist Concord, believing in the sovereignty of God the Father, the Deity of His Son and our Savior Jesus Christ, the ever-present ministry of the indwelling Holy Spirit and in the unerring authority of God's inspired word, the Bible, do establish and maintain Concord Christian School on these foundations. Concord Christian School is a ministry of First Baptist Concord and our doctrinal beliefs are a reflection if the church's beliefs. We are unashamedly a Christian program and we make no apologies for or compromise to our convictions. It is our desire to present the gospel of Jesus Christ so that each child may have the opportunity to accept Him as Lord and Savior of his or her life. Because we are committed to giving our best to the Lord, you can be assured that we will continually seek to offer and achieve excellence in academic education. I Corinthians 10:31 says that 'whether therefore ye eat, or drink, or whatsoever ye do, do all to the glory of God.' **Knowing that our school is only as good as the administration, faculty, and staff, we recruit and retain people of the highest quality and commit to employ those who:** Profess to and live the example of a child of God, saved by the atoning death of His Son, our Lord and Savior, Jesus Christ; believe and agree with Concord Christian School's philosophy and foundation; **feel personally called into Christian education by God**; possess the ability and aptitude to teach and lead through prior educational achievements and experience. **These statements of faith and philosophy are important to our school and serve as the foundation of what the school does**.

(Exhibit D, Ledet Declaration, pages 7-8 (emphasis added)) Accordingly, Concord Christian held out the Plaintiff to be a minister of the Christian faith to the parents of the children whom she taught. (Declaration of Ledet ¶ 33).

Furthermore, the Faculty/Staff Handbook for 2016 through 2017 includes   the following "BELIEF STATEMENTS."

1. "We believe the Bible to be the inspired, the only infallible, authoritative, inerrant Word of God (2 Timothy 3:15, 2 Peter 1:21)."

2. "We believe there is only one God, eternally existent in three persons Father, Son, and Holy Spirit (Genesis 1:1, Matthew 28:19, John 10:30)."

3. "We believe in the deity of Christ (John 10:33), His virgin birth (Isaiah 7:14) His sinless life (Hebrews 4:15); His miracles (John 2:11); His resurrection (John 11:25); His ascension to the right hand of the Father (Mark 16:19); His personal return in power and glory (Acts 1:11; Revelation 19:11)."

4. "We believe in the absolute necessity of regeneration by the Holy Spirit for salvation because of the exceeding sinfulness of human nature; and that men are justified on the single ground of faith in the shed blood of Christ, and that only by God's grace and through faith we alone are saved (John 3:16-19; 5:24; Romans 3:23; 5: 8- 9)."

5. "We believe in the resurrection of both the saved and the lost; they that are saved unto the resurrection of life, and they that are lost unto the resurrection of damnation (John 5: 28 29)."

6. "We believe in the spiritual unity of believers in our Lord Jesus Christ (Romans 8: 9; I Corinthians 12: 12; Galatians 3; 26- 28)."

7. "We believe in the present ministry of the Holy Spirit by whose indwelling the Christian is enabled to live a godly life (Romans 8: 13- 14; I Corinthians 3; 16; 6: 19- 20; Ephesians 4:30; 5: 18)."

(Exhibit D. Ledet Declaration).

The Faculty/Staff Handbook for 2016 - 2017 includes the following "BIBLICAL EDUCATION PRINCIPLES."

1. "The education of children and youth is the primary responsibility of the parents (Deuteronomy 11:19; Proverbs 22: 6)."

2. "The education of children and youth is a 24 hours per day, 7 days per week process that continues from birth until maturity (Deuteronomy 6: 7)."

3. "The education of children and youth must have as its primary goals the salvation and discipleship of the next generation (Matthew 28: 19- 20; Psalm 789:6 -7)."

4. "The education of children and youth must be based on God's Word as the absolute truth (Matthew 24: 35; Psalm 119: 89)."

5. "The education of children and youth must hold Christ as preeminent in all of life (Colossians 2: 6 10; 2: 3)."

6. "The education of children and youth, if and when delegated to others by parents/guardians, must be done so with the utmost care so as to ensure that all teachers follow these principles (Exodus 18: 21; I Samuel 1: 27- 28).

7. "The education of children and youth results in the formation of a belief system or worldview that is based on Biblical teaching (Luke 6: 40; Philippians 4: 9)."

(Exhibit D. Ledet Declaration, page 9).

The Faculty/Staff Handbook continues with the following, "OVERALL OBJECTIVES OF A CONCORD CHRISTIAN SCHOOL EDUCATION.:

> The School Views the student as created by God, in God's image and likeness; Pledges to assist the student at each level of education to fully realize his undeveloped capacities for knowledge and wisdom apace with his maturing years; Takes a biblical view of the student. Scripture teaches us that our students are unique individuals created in God's image yet possessing a morally corrupt nature. Our goal at Concord Christian School is to provide opportunities for spiritual growth through biblical instruction, compassionate discipline and correction, and nurture and encouragement, thus allowing our students to know God and Jesus Christ which is eternal life; Takes a developmental view of the student. At Concord Christian School, we recognize the many facets that contribute to the educational development of our students: personalities, degrees of readiness and motivation, stages of physical growth, environment of the home, spiritual maturity, and relationships to those in the world around them. Such recognition enables us to minister to our students on multiple levels.

(Exhibit D. Ledet Declaration, page 9).

At CCS, the ministerial requirements for teachers are clear:

**The Teacher: Will be committed to the Lordship of Jesus Christ and set before students a noble example of Christian life and conduct**; Will seek to know each student's abilities, feelings, values, and hopes; Will build many roads to success into the instructional program; Will communicate what is expected of students. Will communicate how students can get assistance to achieve successfully what is expected of them; Will respect each student as an image bearer of God, regardless of the student's performance; Will lead the life of a Christian scholar in the vast and exciting worlds of fine arts, science, mathematics, language, literature, history, etc; **The teacher will be a spiritual and intellectual model for students to follow and will have something rich and challenging to offer students**; Will carefully examine and prepare for the learning styles of students; Will bring great enthusiasm to the teaching-learning transaction; Will have a passion for learning and an ever increasing mastery of the subjects they teach; Will set before students the rigorous requirements of the pursuit of academic excellence.

(Exhibit D. Ledet Declaration page 9-10 (emphasis added)).

CCS's Philosophy as outlined in the Faculty/Staff Handbook states

The fear of the Lord is the beginning of wisdom. At the heart of the Christian philosophy of education is the acknowledgement that God created all things and that they exist by His power and for His pleasure. Only through Christ can there be a unity which gives meaning to all parts of life. **An education which fails to acknowledge God and His work will always be woefully inadequate and incomplete. An education which understands the nature of reality, God, the universe, man and His purpose for existence, truth and absolutes, must be one which teaches the Bible as God's infallible Word and sees each student as created in God's image for His purpose**. Life is then seen as contributing to God's purpose and man's ultimate goal is to know and obey God. **Concord Christian School endeavors to give a completely God-centered orientation of life to each student.** It strives to help produce the mind of Christ in its students and to establish a well-grounded, biblical world view. Academics are not a means of self-promotion or pride but a way of increasing one's awareness of God and being useful in His kingdom. Christians should excel in all subject areas because they put Christ first and see their work as unto the Lord and not unto men. The ultimate responsibility of educating a child has been given to the parents. Concord Christian School operates as an extension of and partner with the home and church in training children to be godly, and also focuses on developing the whole child: spiritually, academically, athletically, creatively, and socially.

(Ledet Declaration, Exhibit D, page 6 (emphasis added)).

CCS's Biblical Education Principals are clear and Biblically-based.

The Education of Children and Youth: Is the primary responsibility of the parents. (Deuteronomy 11:19; Proverbs 22:6); is a 24 hours per day, 7 days per week process that continues from birth until maturity. (Deuteronomy 6:7); Must have as its primary goals the salvation and discipleship of the next generation. (Matthew 28: 19-

20; Psalm 78:6-7); must be based on God's Word as the absolute truth. (Matthew 24:35; Psalm 119:89); must hold Christ as preeminent in all of life. (Colossians 2:3, 6-10); if and when delegated to others by parents/guardians, must be done so with the utmost care **so as to ensure that all teachers follow these principles**. (Exodus 18:21; 1 Samuel 1:27-28); Results in the formation of a belief system or worldview that is based on Biblical teaching. (Luke 6:40; Philippians 4:9).

(Exhibit D. Ledet Declaration, page 9 (emphasis added))

In accordance with CCS's Biblical Education Principals, CCS adopted a Biblical Integration curriculum. CCS provided Plaintiff with a Lesson Plan Format which required her to incorporate Biblical studies into each of the topics which she taught. Plaintiff was tasked with the important task of implementing CCS's Belief Statements, Biblical Education Principles, Overall Objectives, Philosophy, and Biblical Education Principles by transmitting and teaching the Christian faith, integrating them into her lesson plans. (Ledet Declaration, paragraph 43-45).

## SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), the Court will render summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Lee v. Ritter*, 2005 U.S. Dist. LEXIS 34988, 68, 2005 WL 3369616 (E.D. Tenn. Dec. 12, 2005). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994), cert. denied, 516 U.S. 806 (1995); *Kentucky Div., Horsemen's Benev. & Prot. Assoc., Inc. v. Turfway Park Racing Assoc., Inc.*, 20 F.3d 1406, 1411 (6th Cir. 1994), and the Court must view the facts and all inferences drawn therefrom in the light most favorable to the nonmoving party, Plaintiff. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Oakland Gin Co., Inc. v. Marlow*, 44 F.3d 426, 429 (6th Cir. 1995); *City Management Corp. v. U.S. Chemical Co., Inc.*, 43 F.3d 244, 250 (6th Cir. 1994). The Court cannot weigh the evidence or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. *Lee*, 2005 U.S. Dist. LEXIS at 68. The nonmoving party may not rest on her pleadings, but must come forward with some significant probative evidence to support her claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Lansing Dairy*, 39 F.3d at 1347; *Horsemen's Benev.*, 20 F.3d at 1411; *see also Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992) (holding Courts do not have the responsibility to search the record *sua sponte* for genuine issues of material fact). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249; *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435-36 (6th Cir. 1987). The standard for summary judgment mirrors the standard for directed verdict. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it should enter summary judgment. *Id.*; *Lansing Dairy*, 39 F.3d at 1347; *Horsemen's Benev.*, 20 F.3d at 1411.

## LAW AND ARGUMENT

## I.   CCS HAS ESTABLISHED AN AFFIRMATIVE DEFENSE REGARDING PLAINTIFFS ALLEGATION AND, THEREFORE, PLAINTIFF CANNOT ESTABLISH A CLAIM UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42

**U.S.C. § 2000E, ET SEQ., AS AMENDED BY THE PREGNANCY DISCRIMINATION ACT OF 1978.**

> A.      **The Undisputed Facts Establish That Plaintiff's Claims Are Barred By The Ministerial Exception.**

In *Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC*, 565 U.S. 171, 188, 132 S. Ct. 694, 181 L. Ed. 2d 650 (2012), the court recognized a ministerial exception as an affirmative defense which bars employment-discrimination claims. To determine whether the ministerial exception bars an employment-discrimination claim against a religious organization, the only question is whether the employee qualifies as a "minister" within the meaning of the exception. *See id.* at 190-91. In this regard, *Hosanna-Tabor* instructs courts to assess a broad array of relevant "considerations," including but not limited to (1) the employee's "formal title," (2) "the substance reflected in that title," (3) the employee's "use of th[e] title," and (4) "the important religious functions she performed." *Id.* at 192.

In *Hosanna-Tabor*, the U.S. Supreme Court held that "a 'ministerial exception,' grounded in the First Amendment, . . . precludes application of [antidiscrimination] legislation to claims concerning the employment relationship between a religious institution and its ministers." 132 S. Ct. at 705. The Court reasoned:

> The members of a religious group put their faith in the hands of their ministers. Requiring a church to accept or retain an unwanted minister, or punishing a church for failing to do so, intrudes upon more than a mere employment decision. Such action interferes with the internal governance of the church, depriving the church of control over the selection of those who will personify its beliefs. By imposing an unwanted minister, the state infringes the Free Exercise Clause, which protects a religious group's right to shape its own faith and mission through its appointments. According the state the power to determine which individuals will minister to the faithful also violates the Establishment Clause, which prohibits government involvement in such ecclesiastical decisions.

*Id.* at 706.

The Supreme Court further confirmed, as the Second Circuit and "[e]very Court of Appeals to have considered the question" had previously held, that the ministerial exception does not apply only to "the head of a religious congregation." *Hosanna-Tabor*, 132 S. Ct. at 707 (collecting pre-

Hosanna-Tabor cases applying exception to organist, music directors, press secretary and staff of Jewish nursing home). The Supreme Court was "reluctant, however, to adopt a rigid formula for deciding when an employee qualifies as a minister." *Hosanna-Tabor*, 132 S. Ct. at 707. The Court instead thoroughly examined the "circumstances of [the plaintiff's] employment" and delineated a number of factors on which it relied in concluding that the ministerial exception applied in her case. *Id.* at 707-10.

Since Hosanna-Tabor was decided in 2012, the Fifth and Sixth Circuits and a handful of district courts have considered the application of the ministerial exception in a diverse range of employment discrimination cases. See, e.g., *Conlon v. InterVarsity Christian Fellowship*, 777 F.3d 829, 833 (6th Cir. 2015) (holding that exception applied to "spiritual director"); *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 176-79 (5th Cir. 2012) (applying exception to parish's music director); *Rogers v. Salvation Army*, No. 14-CV-12656, 2015 U.S. Dist. LEXIS 61112, 2015 WL 2186007, at *6-7 (E.D. Mich. May 11, 2015) (ministerial exception applied to "spiritual counselor").

### B.    Plaintiff's Employment at Concord Christian required her to be a ministerial employee.

On or around March 28, 2011, the Plaintiff filled out an Application for Teacher Employment ("Employment Application") where she affirmatively stated that she fully supported the Statement of Faith of the School. That Statement of Faith is contained in the 2016-2017 handbook which governed Plaintiff's last employment contract with CCS.

The Statement of Faith states as follows:

Because Concord Christian School is a ministry of First Baptist Concord, our doctrinal beliefs are a reflection of the church's beliefs. We are unashamedly a Christian program and we make no apologies for or compromises to our convictions. It is our desire to present the gospel of Jesus Christ so that each child may have the opportunity to accept Him as Lord and Savior of his or her life; We believe the Bible to be the inspired, the only infallible, authoritative, inerrant Word

of God (2 Timothy 3:15, 2 Peter 1:21). We believe there is only one God, eternally existent in three persons – Father, Son, and Holy Spirit (Genesis 1:1, Matthew 28:19, John 10:30); We believe in the deity of Christ (John 10:33), His virgin birth (Isaiah 7:14); His sinless life (Hebrew 4:15); His miracles (John 2:11); His resurrection (John 11:25); His ascension to the right hand of the Father (Mark 16:19); His personal return in power and glory (Acts 1:11; Revelation 19:11). We believe in the absolute necessity of regeneration by the Holy Spirit for salvation because of the exceeding sinfulness of human nature; and that men are justified on the single ground of faith in the shed blood of Christ, and that only by God's grace and through faith we alone are saved (John 3:16 – 19; 5:24; Romans 3:23; 5: 8 – 9). We believe in the resurrection of both the saved and the lost; they that are saved unto the resurrection of life, and they that are lost unto the resurrection of damnation (John 5: 28 – 29). We believe in the spiritual unity of believers in our Lord Jesus Christ (Romans 8: 9; I Corinthians 12: 12; Galatians 3; 26 – 28). We believe in the present ministry of the Holy Spirit by whose indwelling the Christian is enabled to live a godly life (Romans 8: 13 – 14; I Corinthians 3; 16; 6: 19 – 20; Ephesians 4:30; 5: 18). Because we are committed to giving our best to the Lord, you can be assured that we will continually seek to offer and achieve excellence in academic education. Whether therefore ye eat, or drink, or whatsoever ye do, do all to the glory of God. I Corinthians 10:3.1

Every employee, male or female, is required to ascribe verbally and in writing to CCS's Statement of Faith. Even though the Employment Application gave her the opportunity to indicate and explain portions of the Statement of Faith with which she did not agree. She gave no indication that she disagreed with the CCS Statement of Faith in any respect, Plaintiff did not do so. In fact, the affirmatively checked the box, representing to CCS that she agreed with the CCS Statement of Faith in its entirety.

On Plaintiff's Employment Application, the Plaintiff also indicated that she had a Christian Background and believed in God. She represented that shehad been baptized in the First Baptist Concord Church. CCS is a ministry of that church. In her own handwriting, Plaintiff provided her Christian testimony of her conversion on the application.

Plaintiff further signed a Declaration of Moral Integrity which states:

"DECLARATION OF MORAL INTEGRITY" "Concord Christian School expects all of it employees to model the same Christian values and lifestyle that it seeks to include in its students. As an applicant for a staff position at Concord Christian School, I recognize, understand, and agree to live by the Christian moral standards of the school. I declare that during the past year I have not engaged in, at the current time I am not engaging in, and promise that I will not during the term of my

employment engaged in inappropriate sexual conduct. Inappropriate conduct includes, but is not limited to, such behaviors as the following: heterosexual activity outside of marriage (e.g., premarital sex, cohabitation, and extramarital sex), homosexual or lesbian sexual activity, sexual harassment, use or viewing of pornographic material or websites, or sexual abuse or improprieties towards minors as defined by Scripture and federal or state law. I declare that the above statement is factual and true. My signature below indicates that I meet the moral integrity and Christian role model lifestyle requirements of Concord Christian School.

By signing the Declaration of Moral Integrity, the Plaintiff represented to CCS that she had not engaged in, was not currently engaging in, and agreed not to engage in "inappropriate sexual conduct" during the entire time that she was a CCS employee. The Declaration of Moral Integrity defined "inappropriate conduct" to include "heterosexual activity outside of marriage (e.g., premarital sex, cohabitation, and extramarital sex)." The Plaintiff promised not to engage in sex outside of marriage.

Every year that the Plaintiff was employed by CCS, the Plaintiff signed an agreement acknowledging that she was governed by the Concord Christian Handbook. The Faculty/Staff Handbook for 2016 through 2017 includes the following Commitment Statement which represents to students, their parents, and the community at large the commitment of CCS's employees, including the Plaintiff, to the unabashed, Christian ministry of CCS and First Baptist Concord.

We, the administration, staff, and congregation of First Baptist Concord, believing in the sovereignty of God the Father, the Deity of His Son and our Savior Jesus Christ, the ever present ministry of the indwelling Holy Spirit and in the unerring authority of God's inspired word, the Bible, do establish and maintain Concord Christian School on these foundations." Concord Christian School is a ministry of First Baptist Concord and our doctrinal beliefs are a reflection if the church's beliefs. We are unashamedly a Christian program and we make no apologies for or compromise to our convictions. It is our desire to present the gospel of Jesus Christ so that each child may have the opportunity to accept Him as Lord and Savior of his or her life. Because we are committed to giving our best to the Lord, you can be assured that we will continually seek to offer and achieve excellence in academic education. I Corinthians 10: 31 says that 'whether therefore ye eat, or drink, or whatsoever ye do, do all to the glory of God.' Knowing that our school is only as good as the administration, faculty, and staff, we recruit and retain people of the highest quality and commit to employ those who: Profess to and live the example of a child of God, saved by the atoning death of His Son, our Lord and Savior, Jesus Christ; believe and agree with Concord Christian School's philosophy and foundation; feel personally

called into Christian education by God; possess the ability and aptitude to teach and lead through prior educational achievements and experience. These statements of faith and philosophy are important to our school and serve as the foundation of what the school does.

Thus, CCS held out the Plaintiff to be a minister of the Christian faith to the parents of the children whom she taught and to the community at large. (Declaration of Ledet, No. 33).

CCS also held the Plaintiff, and other faculty and staff of CCS, out as ministers through the Bible-based beliefs to which faculty and staff were required to adhere. The Faculty/Staff Handbook for 2016 through 2017 provides for the following "BELIEF STATEMENTS

1. "We believe the Bible to be the inspired, the only infallible, authoritative, inerrant Word of God (2 Timothy 3:15, 2 Peter 1:21)."

2. "We believe there is only one God, eternally existent in three persons Father, Son, and Holy Spirit (Genesis 1:1, Matthew 28:19, John 10:30)."

3. "We believe in the deity of Christ (John 10:33), His virgin birth (Isaiah 7:14) His sinless life (Hebrews 4:15); His miracles (John 2:11); His resurrection (John 11:25); His ascension to the right hand of the Father (Mark 16:19); His personal return in power and glory (Acts 1:11; Revelation 19:11)."

4. "We believe in the absolute necessity of regeneration by the Holy Spirit for salvation because of the exceeding sinfulness of human nature; and that men are justified on the single ground of faith in the shed blood of Christ, and that only by God's grace and through faith we alone are saved (John 3:16   19; 5:24; Romans 3:23; 5: 8- 9)."

5. "We believe in the resurrection of both the saved and the lost; they that are saved unto the resurrection of life, and they that are lost unto the resurrection of damnation (John 5: 28 29)."

6. "We believe in the spiritual unity of believers in our Lord Jesus Christ (Romans 8: 9; I Corinthians 12: 12; Galatians 3; 26- 28)."

7. "We believe in the present ministry of the Holy Spirit by whose indwelling the Christian is enabled to live a godly life (Romans 8: 13- 14; I Corinthians 3; 16; 6: 19- 20; Ephesians 4:30; 5: 18)." In addition to the fact that CCS required Plaintiff to adhere to the belief and mission of a minister, it is clear that CCS hired Plaintiff to perform the work of a minister. In accordance with Concord School's Biblical Education Principals, Plaintiff was responsible for implementing CCS's Biblical Integration curriculum.

To facilitate this, CCS provided Plaintiff with a Lesson Plan Format which required her to incorporate Biblical studies into her lessons. Plaintiff willingly complied, and clearly integrated Biblical and Christian teachings into her lesson plans, regardless of the subject, as indicated by Exhibit D to the Ledet Declaration. Accordingly, Plaintiff was tasked with an important role in transmitting and teaching Christian faith in her lesson plans, and she did so willingly and in accordance with her ministerial role.

Analyzing Plaintiff's employment under the four *Hossana-Tabor* factors, there can be no other reasonable conclusion other than Plaintiff was a ministerial employee. According to the 2016-2107 handbook, all teachers must feel "personally called into Christian Education by God." (Exhibit D, Ledet Declaration, page 8). Because she accepted employment at CCS and continued to sign employment agreements year after year, Plaintiff, clearly must have felt "personally called into Christian Education by God".

As is reflected throughout the Faculty/Staff Handbook and outlined in this memorandum, the idea that a teacher is called into the ministry of Christian Education is not simply rhetoric. It is integral to CCS's existence.

CCS is clear that it is "unashamedly Christian." Every lesson planned and taught by teachers, including the Plaintiff, must include Biblical integration. Plaintiff herself professed her personal

faith when she (1) applied for the position of teacher at CCS and (2) acknowledged that she supported the beliefs of First Baptist Concord and CCS as a ministry of the Church.

Because CCS is a ministry of First Baptist Concord, the Plaintiff was at all times functioning as the conduit for conveying the religious teachings of the Church through the ministry of CCS, impacting the lives of children whose parents chose to send their children to CCS, with the express purpose of transmitting the belief system of the Church to their children through the teachers. Accordingly, Plaintiff, and other CCS teachers like her are the holders of the most important ministerial positions in CCS.

The ministerial exception adopted by the United States Supreme Court in *Hosanna-Tabor* recognizes that the First Amendment of the United States Constitution protects the right of churches and religious organizations to select the people who serve as their ministers. The selection and dismissal of ministers is an ecclesiastical matter into which the Courts will not interfere. Because Plaintiff satisfies all of the requirements of a minister of CCS, CCS's decision to call her for ministry and to dismiss her from ministry when she no longer espoused the Christian beliefs helf by CCS is an internal ecclesiastical decision protected by the First Amendment of the United States Constitution. Accordingly, Plaintiff is barred from making an employment discrimination claim against CCS, and the Court should grant CCS summary judgment on her claim

## II. CONCORD HAS ESTABLISHED A LEGITIMATE NONDISCRIMINATORY REASON FOR NOT RENEWING PLAINTIFF'S CONTRACT AND PLAINTIFF CANNOT ESTABLISH A CLAIM UNDER THE TENNESSEE HUMAN RIGHTS ACT, TENN. CODE ANN. § 4-21-401, ET SEQ.

The Tennessee Human Rights Act does not apply to religious educational institutions like CCS.

**4-21-405. Religious groups exempted.**

> This chapter shall not apply to religious corporations, associations, educational institutions, or societies, with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by the corporation, association, educational institution, or society, of its religious activities.

Tenn. Code Ann. § 4-21-405.

Based upon the plain language of Tenn. Code Ann. § 4-21-405, the Tennessee Human Rights Act does not apply to religious groups including educational institutions like CCS. Therefore, Plaintiff's purported claim under the Tennessee Human Rights Act is barred by the plain language of Tenn. Code Ann. § 4-21-405 and must be dismissed.

## III. PLAINTIFF HAS PRESENTED NO PROOF THAT DEFENDANT FIRST BAPTIST CONCORD FOUNDATION, INC. WAS HER EMPLOYER.

Plaintiff has proffered no proof she was ever employed by First Baptist Concord Foundation, Inc. At all times material hereto, plaintiff was a contract employee of Concord Christian School, LLC.

Furthermore, Plaintiff has not exhausted her administrative remedies as to First Baptist Concord Foundation, Inc. Plaintiff did not even allege that First Baptist Concord Foundation Inc. was her employer when she filed her charge with the EEOC and Tennessee Human Rights Commission. She only named CCS. In addition to there being no proof that the Plaintiff was employed by this defendant, the Court lacks subject matter jurisdiction over this defendant due to the failure to utilize administrative remedies.

## CONCLUSION

Concord Christian School, LLC is "unashamedly Christian." It serves as a vital ministry of First Baptist Church Concord. Plaintiff, and the other teachers at CCS are ministers. They affirm their faith, they are called to teach at CCS, they integrate Biblical teachings in everything they do, and are required to meet moral codes and standards to which they agree.

Plaintiff was never terminated. Her contract ended, and was not renewed, because she did not meet the standards to which CCS ministers were required to adhere. Her ministering to influence over the lives of students was the most important ministry of CCS - the whole reason for its existence as exemplified in the handbook governing the teaching ministry.

In 2012, the United States Supreme Court construed our Constitution and determined that it provided protection for religious institutions from claims of alleged discrimination arising from employment decisions related to ministers. This important exception preserves and protects religious freedoms. Plaintiff's claim of alleged discrimination based on her sex and pregnancy must fail under the ministerial exception created by the United States Supreme Court as a matter of law.


RESPECTUFLLY SUBMITTED:


/s/ Clint J. Woodfin
CLINT J. WOODFIN - 016346
Attorney for Defendant
Spicer Rudstrom, PLLC
First Tennessee Plaza, Suite 1400
800 South Gay Street
Knoxville, TN 37929
(865) 673-8516 - Office
(865) 673-8972 – Fax

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2019, the Clerk of Court was requested to file a copy of the foregoing Memorandum of Law. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

/s/ Clint J. Woodfin
CLINT J. WOODFIN